IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| MISTY LANDRY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 5:14-cv-00167 (LJA) |
| | : | |
| MIKE HOWELL, also known | : | |
| as BRYCE EMORY, doing business | : | |
| as FRESHWAY MARKET, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court is Defendant's Motion for Partial Summary Judgment (Doc. 24). For the following reasons, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## FACTUAL BACKGROUND[1]

Misty Landry, Plaintiff, was employed by Freshway Market in Zebulon, Georgia, from December 20, 1998 to May 31, 2013. (Doc. 32-1, ¶ 3). Freshway Market is owned by Bryce Emory. *Id.* at ¶ 1. Mike Howell, Defendant, is the President of Bryce Emory. *Id.* at ¶ 2. Plaintiff began her career at Freshway Market as a part-time bagger, and was eventually promoted to Head Cashier, and then Store Manager. *Id.* at ¶ 4-5. The Store Manager position is salaried. *Id.* at ¶ 11. As Store Manager, Plaintiff's duties included supervising department heads, handling invoice paperwork, answering the phone, assisting with customer concerns,

---

[1] The relevant facts are derived from the Amended Complaint (Doc. 6), the Answer to Amended complaint (Doc. 7), Defendant's Statement of Undisputed Facts (Doc. 24-1), Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. 32-1), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

1

managing money, and addressing miscellaneous problems that arose throughout the day. (Doc. 26 at 20).

On October 28, 2012, Plaintiff was admitted to the hospital for emergency surgery to break up a kidney stone. (Doc. 32-1, ¶ 35). Plaintiff remained in the hospital until October 30, 2016. (Doc. 26 at 91:23-25). In early November, 2012, Plaintiff received a diagnosis of Medullary Sponge Kidney Disease. (Doc. 32-1, ¶ 39). Defendant was aware of Plaintiff's diagnosis. (Doc. 7, ¶ 16). Although Plaintiff cannot remember the exact wording of the conversation, Plaintiff informed Defendant either that she had a "serious medical condition" or that she had been "diagnosed with a rare kidney disease" and that she would need continuous medical care, including the possibility of future surgeries and dialysis. (Doc. 26 at 90-91).

Plaintiff missed work for four additional surgeries related to her kidney disease while employed by Defendant. (Doc. 26 at 95:15-19; 99:15-24; 104:16-24; 146:14-15). She also missed work for a number of doctor's appointments between October, 2012 and May, 2013. (Doc. 32-1, ¶¶ 48, 56, 60, 69). Plaintiff was paid for every day she missed due to her health condition between October 28, 2012 and April 28, 2013. *Id.* at ¶ 78. Plaintiff also exercised and received all the health benefits for which she was enrolled. *Id.*

Between October, 2012 and May, 2013, Plaintiff received multiple disciplinary warnings. On October 6, she received a written warning for leaving the store without informing Defendant. (Doc. 26, Ex. 2). Plaintiff admitted that she left the store for an hour and stated that she would inform Defendant when she needed to leave in the future. *Id.* On December 5, she received a written warning because the meat room at the store had not been cleaned properly. *Id.* at Ex. 5. This was the first time Defendant mentioned a problem with the room, which was in the same condition prior to Plaintiff's diagnosis. (Doc. 32-2, ¶ 65, 66). On February 13, she received a written warning for failing to follow instructions about ordering new freezer flaps and submitting weekly reports. The warning advised that "any future infractions may result in termination or demotion." (Doc. 26, Ex. 7). On March 14, 2013, Plaintiff was written up because drinks that arrived on Monday had not been put in the display by Thursday. *Id.* at Ex. 9. Plaintiff was written up despite the fact that she had

2

been out on medical leave Tuesday and Wednesday of that week. *Id.* at 65:23-66:3. Between March and April, 2013, Plaintiff received four additional warnings for similar infractions. *Id.* at Exs. 9-13. Defendant testified that, when Plaintiff was out for her condition, "The store ha[d] to operate the same way. Now, you and I know it ain't going to operate the same way if she's out for surgery. That's why I need her in the store." (Doc. 32-11, at 158: 11-18).

On April 29, 2013, Defendant demoted Plaintiff from store manager to head cashier. (Doc. 26 at 159:8). Defendant told Plaintiff that "he thought that this would help with some of [her] health issues and at least [she] got to keep [her] health insurance and rock on." *Id.* at 159:12-21. The head cashier position is not salaried, and Plaintiff went from earning $925.00 per week to $14.50 an hour. (Doc. 32-3, ¶ 57). On May 17, 2013, Plaintiff gave her verbal resignation. (Doc. 32-1, ¶ 79). Plaintiff continued to report to work until May 31, 2013. *Id.*, ¶ 80.

## PROCEDURAL HISTORY

On April 29, 2014, Plaintiff commenced this action against Defendant. (Doc. 1). Plaintiff filed an Amended Complaint on July 21, 2014, alleging interference and retaliation under the Family Medical Leave Act (FMLA), negligent retention, and violations of the Employee Retirement Income Security Act (ERISA) (Doc. 6). Defendant filed its Answer to the Amended Complaint on July 30, 2014 (Doc. 7). On April 24, 2015, Defendant moved for Summary Judgment on Plaintiff's FMLA claims. (Doc. 24). *Id.* Plaintiff responded on May 31, 2015, (Doc. 32) and Defendant replied on June 6, 2015. (Doc. 35). As such, Defendant's Motion is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

Defendant did not raise the ERISA or negligent retention claims in the Motion for Summary Judgment, but argues in its reply (Doc. 35) that it moved for Summary Judgment on all of Plaintiff's claims, including Plaintiff's ERISA and negligent retention claims. (Doc. 35 at 11). Fed. R. Civ. P. 56 requires a party moving for summary judgment to "identify[ ] each claim or defense- or the part of each claim or defense- on which summary judgment is sought." As Defendant neither identified Plaintiff's ERISA and negligent retention nor

presented any argument as to these claims in its Motion for Summary Judgment (Doc. 24), the court will construe Defendant's Motion as a Partial Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must

do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. The Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

### I. Qualification for FMLA Leave

The Family Medical Leave Act (FMLA) grants twelve weeks of unpaid leave for any eligible employee suffering from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "To protect this right, the FMLA allows employees to bring a private cause of action for interference or retaliation." *Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1166 (11th Cir. 2014). As a prerequisite for either cause of action, the employee must establish that she qualified for FMLA leave. *Id.* at 1167. "While suffering from a serious health condition is necessary, it is not sufficient for an employee to earn FMLA leave. She must also give her employer notice of her need for leave." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195; *see also Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1167 (11th Cir. 2014). That Defendant is a covered employer and that Plaintiff was an eligible employee under the FMLA is not

disputed. (Doc. 5, ¶¶ 9, 10). Defendant, however, argues that Plaintiff's condition was not covered and that she did not give notice as required by the Act.

### a. Covered condition

Plaintiff had a chronic serious health condition. A "serious health condition" is defined as an "illness, injury, impairment or physical or mental condition" involving either inpatient care or continuing treatment by a health care provider. 29 C.F.R. § 825.113(a). A "chronic serious health condition" is one which "requires periodic visits for treatment by a health care provider," "continues over an extended period of time," and "may cause episodic rather than a continuing period of incapacity." *Id.* A "chronic serious health condition" involves "continuing treatment by a health care provider", and is thus covered under the FMLA, when it includes "any period of incapacity or treatment for such incapacity due to a chronic serious health condition." 29 C.F.R. § 825.115(c); *see also Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1168 (11th Cir. 2008).

Plaintiff was diagnosed with Medullary Sponge Kidney Disease in late October or early November 2012. (Doc. 32-5, ¶ 5). The condition required Plaintiff to undergo six surgical procedures in seven months and attend more than ten non-surgical doctor appointments. Thus, Plaintiff's condition qualifies as a "chronic serious health condition." *Id.* at ¶¶ 4, 10-12; *Cf. Aboukora c. Keebler Co.*, 2006 WL 839238, at *7 (M.D. Ga. 2006) (finding that Plaintiff had a chronic serious health condition when evidence showed that "Plaintiff has a history of back pain…, made periodic visits to his physician, and was treated with prescription medications") *with Pivac v. Component Services & Logistics, Inc.*, 570 Fed.Appx. 899, 903 (11th Cir. 2014) (holding that one isolated visit to seek treatment for purported anxiety and depression lasting less than two weeks was not evidence of a chronic condition).

Plaintiff's condition both incapacitated her and required treatment for such incapacitation. Incapacity is defined as the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore or recovery therefrom." 29 CFR § 825.113(b). "A demonstration that an employee is unable to work in his or her current job due to a serious health condition is enough to show that the employee is incapacitated, even if that job is the only one the employee is unable to perform." *Hulbert*

*v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1295 (11th Cir. 2006). Plaintiff declared that her condition caused her to have severe pain, nausea, and cramps that made it difficult for her to perform her functions at work, especially before surgeries or when she had to schedule emergency doctor appointments. (Doc. 32-5, ¶¶ 8, 13, 14).

Defendant argues that Plaintiff's health condition did not qualify her for FMLA leave because she was not "unable to perform the functions" of her position. (Doc. 24-2 at 17-19). This argument ignores the regulations supplementing the FMLA, which provides that "an employee who must be absent from work to receive medical treatment for a serious health condition is considered to be *unable to perform the essential functions of the position* during the absence for treatment." 29 C.F.R. § 825.123(a) (emphasis added). Plaintiff established that she suffered from a serious health condition and that she was absent from work for surgeries and doctor's appointments related to this condition. Thus, Plaintiff s serious chronic health condition entitled her to leave under the FMLA.

### b. Notice

"An employee's notice of her need for FMLA leave must satisfy two criteria- timing and content- both of which differ depending on whether the need for leave is foreseeable or unforeseeable." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195 (11th Cir. 2015). Defendant acknowledges that Plaintiff's need for leave was unforeseeable, and only contests the sufficiency of the content of her notice. (Doc. 24-2 at 3). When the need for leave is unforeseeable, the employee need only "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 CFR § 825.303(b). Although "an employee is not required to assert expressly her right to take leave under the FMLA," *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005), "calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligation under the Act." 29 CFR § 825.303(b). Sufficient information may include that a condition renders the employee unable to perform the functions of the job, that the employee has been hospitalized overnight, or that the employee is under the continuing care of a health care provider. 29 CFR § 825.303(b). "Once an employee taking unforeseeable leave informs his employer that potentially FMLA-

qualifying leave is needed, the regulations place on the employer the burden of ascertaining whether the employee's absence actually qualified for FMLA protection." *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1209 (11th Cir. 2001).

After Plaintiff's initial hospitalization, she told Mike Howell either than she had "a serious medical condition" or had been diagnosed with a "rare kidney disease" and that she would need continuous care, follow-up visits, and possibly future surgeries. (Doc. 26 at 90-91). Defendant argues that this notice was insufficient because Plaintiff did not provide specific dates and durations for continuing care and Plaintiff did not notify her employer that she would be unable to perform the functions of her position. (Doc. 24-2 at 15-16). There is no requirement that Plaintiff provide specifics of future care, as long as she provides sufficient information to put Defendant on notice. *Cf. Whitfield v. Hart County, Ga.*, 2015 WL 1525187, at *6 (M.D. Ga., 2015) (finding sufficient notice when Plaintiff "did not indicate the exact duration or amount of leave she would need" but "verbally notified the County of her need for leave by stating that she needed to deviate from regular working hours to care for her disabled child) *with Sparks v. Sunshine Mills, Inc.*, 580 Fed. Appx. 759, 766 (11th Cir. 2014) (finding insufficient notice when Plaintiff did not provide any information related to the timing of leave and it was possible that Plaintiff's condition would not require time off).

Nor is there a requirement that Plaintiff specifically state that she would be unable to perform the functions of her position. *See* 29 CFR §825.303(b) (Sufficient "information *may* include that a condition renders the employee unable to perform the functions of the job.") (emphasis added). Defendant testified that he was "certain [Plaintiff] had kidney stones," that he was "positive" Plaintiff told him that she would need follow-up appointments, and that he knew Plaintiff "was going to have lots of procedures and lots of doctor's appointments." (Docs. 32-11 at 200:16-21; 32-10 at 201:2-12, 202:12-16). Defendant's admission demonstrates that Plaintiff provided adequate notice under the FMLA. With this foundation, the Court considers whether Plaintiff has failed, as a matter of law, to establish her interference and retaliation claims, such that it would be appropriate to grant summary judgment on those claims.

8

## II. Interference with rights under the FMLA

In order to state a claim for interference, an employee need only demonstrate "that she was denied a benefit to which she was entitled under the FMLA and that she has been prejudiced by the violation in some way." *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014). Plaintiff argues that Defendant interfered with her rights under the FMLA by 1) failing to adjust Plaintiff's performance expectation; 2) withholding required notices; 3) providing false information; and 4) subjecting Plaintiff to disciplinary write-up procedures. (Doc. 32 at 10-15). Plaintiff argues that she was prejudiced by this interference because it contributed to her demotion and her decision to return to work quickly. *See e.g.*, *Evans*, 762 F.3d at 1297 (finding that Plaintiff was prejudiced when employer considered her job performance on leave in deciding to reassign her to inferior position). Plaintiff requests damages for lost wages and equitable relief in the form of an injunction to prevent further violation and reinstatement.

Regardless of whether or not Plaintiff stated legitimate claims for interference, her claims fail for lack of available relief. If an employee is prejudiced by an employer's violation, the employee is entitled to lost compensation, benefits, and other monetary damages sustained by reason of the violation and for "appropriate equitable relief, including…reinstatement." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *see also* 29 U.S.C. § 2617(a)(1)(A). However, "a Plaintiff cannot recover under the FMLA in the absence of damages." *Streeter v. City of Pensacola, Fla.*, 501 Fed. Appx. 882, 885 (11th Cir. 2012); *see also Floyd v. Home Depot U.S.A., Inc.*, 278 Fed. Appx. 763, 765 (11th Cir. 2008). Plaintiff produced no evidence that she suffered monetary damages as a result of Defendant's conduct. She testified that, as a salaried employee, she did not have to take unpaid leave days and that she was paid for all of the time she missed work due to her illness. (Doc. 26 at 92:8-9, 144:4-9).

Plaintiff admits that she gave her verbal resignation on May 17, 2013, but does not argue or establish that she was constructively discharged.[2] (Docs. 24-1, ¶ 79; 32-1, ¶ 79).

---

[2] "Constructive discharge occurs when an employer deliberately makes and employee's working conditions intolerable and thereby forces him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009). "A plaintiff must show 'the work environment and conditions of employment were so unbearable that a reasonable person in that person's position

Although Plaintiff argues that she is also entitled to reinstatement to her former position, reinstatement is unavailable when an employee voluntarily resigns.[3] *See MacLean v. City of St. Petersburg*, 194 F. Supp. 2d 1290, 1303 (M.D. Fla. 2002) (holding that Plaintiff was not entitled to reinstatement under the FMLA when she voluntarily resigned from her position); *Teare v. Re/Max of Georgia, Inc.*, 2008 WL 4452356, at *12 (N.D. Ga. 2008) ("An alleged victim of discrimination that loses her employment as a result of discrimination must show either an actual or constructive discharge in order to receive the equitable remedy of reinstatement."); *Wardwell v. School Bd. of Palm Beach County, Fla.*, 786 F.2d 1554, 1558 (11th Cir. 1986) (holding that when district court was clearly erroneous in finding a constructive discharge, the injunction requiring reinstatement must be necessarily vacated).

Because Plaintiff has failed to produce evidence of any harm that would entitle her to damages or equitable relief, Plaintiff's interference claim fails as a matter of law.

## III.    Retaliation under the FMLA

To establish retaliation under the FMLA, Plaintiff must either present direct evidence of the employer's retaliatory intent, or use circumstantial evidence according to the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Strickland*, 239 F.3d at 1209. Plaintiff did not present any direct evidence of retaliation. Therefore, to make a prima facie case of retaliation, Plaintiff must establish that 1) she engaged in a statutorily protected activity; 2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Id.*

---

would be compelled to resign.'" *Id.* (citing *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994)). "Behavior that can be characterized as merely offensive is not actionable, but a tangible psychological injury on the part of the employee is not required for the employer's behavior to be illegal." *Cross v. Southwest Recreational Industries, Inc.*, 17 F.Supp.2d 1362, 1376 (N.D. Ga. 1998). "Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." *Bryant*, 575 F.3d at 1298. Plaintiff has not presented any evidence showing that her work environment was "so unbearable that a reasonable person would be compelled to resign." The fact that Plaintiff was demoted is not enough to show constructive discharge. *See Cross*, 17 F.Supp.2d at 1376. An increase in disciplinary actions is similarly not enough to show an unbearable work environment. *See Wehunt v. R.W. Page Corp.* Thus, in addition to not arguing constructive discharge, Plaintiff has not presented enough evidence to support such a finding.

[3] The Parties have not presented, nor has the Court found federal case law in an FMLA interference case that addresses this exact issue. Thus, the Court has relied on cases in which an employee seeks reinstatement after Title VII violations or the employee alleges an entitlement to reinstatement under the FMLA.

Defendant acknowledges the applicability of the *McDonnell Douglas* framework and the need for Plaintiff to establish a prima facie case but does not argue that Plaintiff failed to establish a prima facie case of retaliation. Rather, Defendant only makes arguments regarding its legitimate, non-retaliatory reason for Plaintiff's demotion and the absence of pretext. Plaintiff engaged in a protected activity by taking FMLA-qualifying leave, suffered an adverse employment decision in the form of her demotion, and demonstrated a causal link given that she was demoted less than a month after her last leave. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (holding that "a period as much as one month between the protected expression and the adverse action is not too protracted"). Therefore, the Court finds that Plaintiff has establish a prima facie case of retaliation.

After a plaintiff makes out a prima facie case, "the burden then shifts to the defendant to articulate a legitimate reason for the adverse action." *Hurlbert*, 439 F.3d at 1297. Defendant has articulated a legitimate reason for Plaintiff's demotion, citing to her numerous written warnings for an unexcused absence and various performance issues. Plaintiff was warned several times about her job performance, and, while she responded to and explained several of the warnings, she generally acknowledged leaving the store to watch her daughter's soccer game and failing to advise her supervisor (Doc. 26, Ex. 2), failing to maintain equipment, which resulted in unsanitary conditions in the meat department (Doc. 26, Ex. 5), and delays in repairing a freezer and submitting reports (Doc. 26, Ex. 7). In light of the warnings regarding Plaintiff's job performance, Defendant's proffered legitimate, non-discriminatory reason for Plaintiff's demotion is sufficiently established. *See Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010) (finding that Plaintiff's poor management was a legitimate reason for adverse action; *Ferguson v. North Broward Hosp. Dist.*, 478 Fed. Appx. 565, 567 (11th Cir. 2012) (finding that Plaintiff's termination was legitimate when he had three bad performance evaluations, three improvement plans, and three disciplinary warnings).

Because Defendant articulated a legitimate reason for Plaintiff's demotion, Plaintiff must "show that the defendant's proffered reason for the adverse action is pretextual" to survive summary judgment. *Hurlburt*, 439 F.3d at 1297. "To show pretext, a plaintiff must

come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* at 1298. "Conclusory allegations or unsupported assertions of discrimination, without more, do not raise an inference of pretext where an employer has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Gilliard v. Georgia Dept. of Corrections*, 500 Fed.Appx. 860, 865 (11th Cir. 2012). However, a "Plaintiff will always survive summary judgment if [she] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.*

While not clearly articulated in Plaintiff's brief, Plaintiff appears to argue that Defendant's excuse was pretext because of the suspicious timing of the write-ups, both temporally and by nature of the fact that the citations only began after her diagnosis and sought to document and punish behavior directly related to Plaintiff's medical leave. That Plaintiff was demoted during the course of her treatments and shortly after returning from leave is evidence of pretext. But, "though close temporal proximity between a protected activity and an adverse action may be sufficient to show a causal connection, temporal proximity standing alone may not be enough to show that a legitimate, non-discriminatory explanation is a pretext for discrimination." *Thomas v. Dolgencorp, LLC*, 645 Fed.Appx. 948, 951 (11th Cir. 2016); *see also Hurlburt*, 439 F.3d at 1297. When combined with other evidence circumstantial evidence of discrimination, however, temporal proximity can contribute to a triable issue of fact with regard to pretext. *Hurlburt*, 439 F.3d at 1297.

Such other evidence is present here. First, all but one of Plaintiff's write-ups occurred after her she began missing work because of her condition. (Doc. 26, Exs. 2-13). Plaintiff was written-up for not putting drinks received on a Monday afternoon in the cooler by Thursday of that week. That she was on leave for a procedure related to her condition on that Tuesday and Wednesday is evidence that she was being punished for tasks she failed to

12

complete during her medical leave. (Doc. 32-2 at 47-49). Defendant also made statements showing antipathy towards Plaintiff's condition and demonstrating that Defendant expected Plaintiff to complete her job functions when she was out on medical leave. Furthermore, when asked if the store should operate the same way when Plaintiff was out for surgery, Defendant replied, "That's right. The store has to operate the same way. Now, you and I know it ain't going to operate the same way if she's out for surgery. That's why I need her in the store." (Doc. 32-11, at 158: 11-18). When Defendant informed Plaintiff of her demotion, he told her that "he thought that this would help with some of [her] health issues and at least [she] got to keep [her] health insurance and rock on." (Doc. 26 at 159:12-21). The suspicious timing of Plaintiff's write-ups, combined with the expectation that Plaintiff work while out sick and Defendant's statements "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Lockheed-Martin Corp.*, 644 F.3d at 1328; *see also Vaughan v. World Changers Church Int'l., Inc.*, 2014 WL 4978439, at *15-16 (N.D. Ga. Sept. 16, 2014) (finding that timing, inconsistent reasoning for firing, false allegations of wrongdoing, and a statement of antipathy towards use of medical leave was sufficient circumstantial evidence to demonstrate pretext). Accordingly, Plaintiff has presented evidence sufficient to allow a reasonable factfinder to conclude that Plaintiff's work performance was not the real reason she was demoted. Thus, summary judgment is not appropriate on Plaintiff's retaliation claim.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Doc. 24) is **GRANTED** in part and **DENIED** in part.

**SO ORDERED**, this  26th  day of      September     , 2016.

/s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**